IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE AYCO COMPANY, L.P.,

      Plaintiff,               12cv0712

                                 **ELECTRONICALLY FILED**

          v.

JEFFREY M. LIPTON and SHELLEY L.
LIPTON,

        Defendants.

## MEMORANDUM OPINION

Plaintiff, Ayco Company, L.P. ("Ayco"), brought this declaratory judgment action

seeking a declaration that it is not bound to arbitrate a dispute with Defendants, Jeffrey M.

Lipton and Shelley L. Lipton (collectively, "the Liptons").   The parties do not dispute that

Jeffrey M. Lipton was the Chief Executive Officer of Nova Chemicals, Inc. ("Nova") from the

time the contract between Nova and Ayco was formed to May of 2009.  The parties also agree

that Ayco's "Engagement Contract" with Nova required Ayco to provide investment advisory,

financial counseling, tax advisory, and tax return services to Nova in exchange for remuneration.

The Liptons filed a Motion to Dismiss the Complaint for declaratory relief (doc. no. 13),

Ayco filed a Brief in Opposition, (doc. no.  19) and the Liptons filed a Reply Brief.  Doc. No. 22.

After thoroughly reviewing the Complaint, the Engagement Contract attached to the Complaint,

and the parties' respective briefs, this Court will grant Defendants' Motion to Dismiss for the

reasons more fully described below.

## I.      Standard of Review

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading.  Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the …claim is and the grounds on which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly*, 550 U.S. 554 and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1947 (2009), the United States Court of Appeals for the Third Circuit, recently explained that a District Court must take three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1947 (2009).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth.' *Id*. at 1950.  Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' *Id*.  This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, No. 10-3539, 2011 F.3d WL 2044166, at *2 (3d Cir. May 26, 2011).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claim(s) presented and to determine whether the facts pled to substantiate the claim(s) are sufficient to show a "plausible claim for relief."  "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.*; *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11.

The Court may not dismiss a Complaint (or Counterclaim) merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 556, 563 n.8. Instead, the Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint (or Counterclaim) that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler,* 578 F.3d at 212; *See also Guirguis v. Movers Specialty Services, Inc.*, 346 Fed.Appx. 774, 776 (3d Cir. 2009). In short, the Motion to Dismiss should not be granted if a party alleges facts which could, if established at trial, entitle him to relief. *Fowler*, 578 F.3d at 563 n.8.

## II.     Factual Background

Ayco provides comprehensive financial counseling and education services to executives and employees of the companies with whom it contracts. Doc. No. 1, ¶7. On or about October 9, 2001, Nova retained Ayco to provide a "Comprehensive Counseling Program" which included certain financial counseling services, including tax preparation services, for Nova's Chief Executive Officer. Id., ¶¶ 9-10; see also Doc. No. 1-1. These tax preparation services were to be provided by Ayco, "[a]t the election of the participants." Doc. No. 1, ¶11; see also Doc. No. 1-1, p. 3.

The relevant portions of the Engagement Contract between Nova and Plaintiff read as follows:

> We will immediately bill our corporate retainer of $15,000. . . .
>
> The annual Continuing Service Corporate Retainer is currently $15,000. A prorated portion of this amount will be billed at the beginning of the second year of service, and will cover the interim period from the end of the first year of service through December 1, 2002. . . .

The first year fee for the Chief Executive Officer is $15,000, each Tier II Executive, $13,500, and each Tier III Executive $12,500 in the Comprehensive Counseling Program. . . .

The annual individual Continuing Service fee for the Chief Executive Officer is currently $9,000, each Tier II Executive is $8,000 and each Tier III Executive is $7,000 in the Comprehensive Counseling Program. . . .

At the election of its participants, The Ayco Company, L.P. will provide preparation of joint federal and state income tax returns for the participant and his her spouse for a fee of $1,500 for Tier II Executives and $1,300 for Tier III Executives. The preparation fee for the CEO will be as incurred. . . .

The parties desire to resolve any controversy, claim or dispute arising out of this agreement or the breach thereof without litigation. Accordingly, the parties agree to submit any controversy, claim or dispute arising between the parties concerning this agreement to the CPR Institute for Dispute Resolution for final and binding arbitration in accordance with the CPR Institute's rules. . . .

Ayco agrees to indemnify Nova Chemicals, Inc., its officers, directors, employees and agents from and against any and all actions, causes of action, suits, counterclaims, judgments, including the cost of reasonable litigation or attorney's fees, that arise out of any act or omission of Ayco in the performance of this agreement but only in the event that it is held by a court of competent jurisdiction that such act or omission was negligent or arose from Ayco's willful misconduct. . . .

See the Engagement Contract, Doc. No. 1-1.

The Complaint avers that because Jeffrey and Shelley Lipton (hereinafter "the Liptons") are not signatories to the Engagement Contract, they are not parties to the contract, and thus, they cannot avail themselves of the arbitration provision in the contract. Doc. No. 1, ¶14. The Complaint notes that the Liptons served a Notice of Arbitration on Ayco, invoking the arbitration provision of the Engagement Contract. Id., ¶18, 20. The Liptons' Arbitration Action asserts claims against Ayco for breach of contract, breach of fiduciary duties, and professional negligence related to Ayco's preparation of the Liptons' 2005-2007 income tax returns. Id., ¶19; see also Doc. No. 1-2.

Ayco seeks a declaration that the Liptons are not parties to the Engagement Contract and thus, Ayco is not bound to arbitrate a dispute with the Liptons.

## III. Discussion

### A. The Complaint and the Contract

As a general matter, this Court, when ruling on a Motion to Dismiss, may not consider matters extraneous to the pleadings. *In re Burlington Coat Factory Sec.Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). However, an exception to the general rule is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *Id.*

In addition, on a Motion to Dismiss, district courts consider the Complaint, its exhibits, matters of public record, and documents that form the basis of a claim. *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n. 3 (3d Cir.2004). Documents form the basis of a claim if they include those that are integral to or explicitly relied on in the Complaint. *Burlington*, 114 F.3d at 1426. Documents are integral when the plaintiff's claims are based on the document. *See In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir.1993).

Accordingly, upon deciding this Motion to Dismiss, this Court has considered the "Engagement Contract" attached to Plaintiff's Complaint because it is integral to the Complaint, and forms the basis for the Complaint.

### B. Third Party Beneficiary Case Law

Next, having determined that the Engagement Contract is a document that this Court can consider when ruling on the Motion to Dismiss, the Court must now determine if the Liptons are in fact in a position so as to enforce the terms of the contract – including the binding arbitration

clause – against Ayco.  More specifically, the question placed before this Court is whether the Liptons are third party beneficiaries to the Engagement Contract, and if so, what rights they have with respect to the enforcement of the Engagement Contract's terms and provisions.

For either Pennsylvania or federal law on third-party beneficiaries, the courts in this Circuit look to the Restatement of Contracts' definition.  *Doe v. Pennsylvania Bd. of Probation and Parole,* 513 F.3d 95, 106 (3d Cir. 2008).  Under the Restatement, a third party can claim rights under a contract, even if not stated expressly, if it is consonant with the intention of the contracting parties.  *Id.*  Section 302 of the Restatement reads as follows:

> Intended and Incidental Beneficiaries
>
> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
>
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>>
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1979).

Stated another way, a third party beneficiary is someone who has "standing to recover on a contract [because] both contracting parties [ ] expressed an intention that the third-party be a beneficiary, and that intention [ ] affirmatively appeared in the contract itself*."  Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008), *citing Scarpitti v. Weborg*, 609 A.2d 147, 149 (1992).

In addition to the parties to a contract, "third-party beneficiaries" of the contract can also enforce its terms. *Doe,* 513 F.3d at 106; *see also, Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc.,* 198 F.3d 415, 424 (3d Cir. 1999), quoting *Visor Builders, Inc. v. Devon E. Tranter, Inc.*, 470 F.Supp. 911, 923 (M.D. Pa.1978) (a third-party beneficiary is "one who, although not a party to the contract, and hence, not in privity with the promisor . . . is permitted to enforce the contract between the promisor and the promisee for its [the third-party beneficiary's] benefit.").

Turning to the facts presented here, first, as Ayco points out in its Complaint, "the Liptons" are not expressly named within, and were not signatories to, the Engagement Contract. See Doc. No. 1, ¶14, and Doc. No. 1-1.[1] However, Ayco concedes that Mr. Lipton was the CEO of Nova at the time the Engagement Contract was formed. Ayco further concedes that Mr. Lipton was CEO of Nova through 1999. Furthermore, the Engagement Contract unequivocally indicates in several places that the financial counseling services, provided by Ayco to Mr. Lipton, as Nova's CEO, were provided pursuant to the Comprehensive Counseling Program with Nova, for separate, additional fees paid to Ayco. The preparation of the CEO's (and his spouse's) tax returns by Ayco were specifically delineated in the Engagement Contract. The contract states, "[a]t the election of its participants, The Ayco Company, L.P. will provide preparation of joint federal and state income tax returns for the participant and his her spouse . . . . The preparation fee for the CEO will be as incurred. . . ." Doc. no. 1-1, p. 3.[2]

Next, applying the third party beneficiary definition as set forth in Restatement, this Court finds that Mr. Lipton and his spouse were intended beneficiaries. First, there is no dispute

---

[1] Charles Stout (the Counseling Senior Vice President) signed the Engagement Contract on behalf of Ayco, and Sheila O'Brien (the Senior Vice President of Human Resources) signed on behalf of Nova.

[2] The Engagement Contract never specifically defines who is a "participant" nor does it state who pays for the preparation fee – Nova or the CEO, individually.

that the Engagement Contract states that, if requested, Ayco will prepare the tax returns for the

CEO and his spouse – the Liptons.   Second, there is no dispute that such an election was made

because there is no dispute that Ayco did in fact prepare the tax returns for the Liptons in 2005,

2006, and 2007.  Doc. no. 1, ¶17.  Although Ayco contends that the "participant" had to "elect"

that the tax returns be prepared, such an election obviously took place because there is no factual

dispute that Ayco prepared the Litpons' tax returns from 2005 through 2007.  Doc. No. 1, ¶¶ 16-

17.   Moreover, Ayco's Complaint avers that Ayco received payment for its preparation of the

Liptons' tax returns.  Id., ¶17.

Thus, the plain language of the Engagement Contract establishes that the Liptons had a

right to performance (*i.e.* the preparation of their tax returns) by Ayco (once someone elected

that Ayco prepare the returns and paid Ayco for the preparation).  Accordingly, the second

portion of the Restatement test has been met: "[A] beneficiary of a promise (the Liptons) is an

intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to

effectuate the intentions of the parties (Nova, as the promisee and Ayco as the promisor) and . . .

the circumstances indicate that the promisee (Nova) intends to give the beneficiary (the Liptons)

the benefit of the promised performance."

Not only does the language of the Engagement Contract establish the Liptons as intended

beneficiaries, Ayco's performance and acceptance of payment had the effect of rendering the

Liptons as such.  The conduct on the part of Ayco, as described by Ayco's assertions in its

Complaint, clearly indicates that Ayco treated the Liptons as beneficiaries of the contract.  See

Doc. No. 1, ¶ 16 (" . . . Ayco provided certain financial counseling and advisory services to the

Liptons pursuant to the Engagement Agreement between Nova and Ayco.")

In conclusion, because the Liptons were intended beneficiaries, the Abritration Clause found in the Engagement Agreement is valid insofar as requiring Ayco and the Litpons to arbitrate any dispute that may arise between them.  Accordingly, the Court will grant Defendants' Motion to Dismiss the Complaint filed by Ayco.  An appropriate Order follows.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties